**Tony LONG, Plaintiff,**

v.

**The CITIZEN'S BANK & TRUST COMPANY OF MANHATTAN, KANSAS and Meryl D. Wilson, Defendants.**

**Civ. A. No. 81–1339.**

United States District Court,
D. Kansas.

May 10, 1983.

---

1. Woolsey and Griese shared some of the commissions but were not otherwise involved.

2. O'Dell was a successful third party defendant on claims by two other defendants in the *Hutton* action who alleged the making of the iden-

tical false and fraudulent representations by O'Dell.

3. See, for example, *Harper v. New Japan Securities International, Inc.*, 545 F.Supp. 1002, 1006–1008 (D.C.Cal.1982).

Mark A. Furney, Manhattan, Kan., Paul H. Hulsey, Jones, Schroer, Rice, Bryan & Lykins, Topeka, Kan., for plaintiff.

Larry Mundy and Ronald W. Fairchild, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for defendant Bank.

Thomas E. Wright, Goodell, Stratton, Edmonds, Palmer & Wright, Topeka, Kan., for defendant Wilson.

## OPINION AND ORDER SUSTAINING DEFENDANT'S MOTION TO DISMISS

THEIS, Senior District Judge.

This is a civil rights case, brought under the auspices of 42 U.S.C. § 1983, in which the plaintiff, Tony Long, seeks to recover

damages for the unlawful prejudgment attachment of his 1980 Jeep CJ–5. The defendant, Citizens Bank and Trust Company of Manhattan, Kansas, held a lien on the Jeep and set in motion the train of events that led to the challenged prejudgment attachment. Jurisdiction is predicated on 28 U.S.C. § 1343(3). The case is currently before the Court on the defendant's motion to dismiss for lack of subject-matter jurisdiction.

### I. Factual Setting

Prior to January 17, 1980, the plaintiff received an injury that resulted in total blindness in his right eye. The workmen's compensation award received by the plaintiff for this injury enabled him to purchase the Jeep involved in this litigation, which he apparently purchased outright.

On January 17, 1980, the defendant lent money to the plaintiff and his wife to enable them to purchase a mobile home. As a condition of receiving the loan, the plaintiff granted to the defendant a lien on the Jeep, which was previously unencumbered, and executed the usual promissory note.

On or about June 5, 1981, the defendant filed suit on the promissory note in the District Court of Riley County, Kansas [hereinafter the Kansas Court], seeking acceleration of the balance due. *See Citizens Bank and Trust Company v. Tony Long and Brenda Long*, No. 81C–402, Riley County, Kansas District Court (1981). At the same time, the Bank filed an affidavit in support of its application for a prejudgment attachment of the Jeep, pursuant to K.S.A. § 60–703 (1981 Supp.). The prejudgment attachment was issued on June 5, 1981 on the signature of a deputy clerk of the Kansas Court, and the Jeep was attached the same day by a uniformed officer of the Riley County Police Department. The original complaint in this action was filed on July 22, 1981.

On January 19, 1982, a hearing was held in the Kansas Court for the purpose of determining the propriety of the prejudgment attachment. Judge Innes of that Court found that K.S.A. § 60–703 requires all prejudgment attachments to be signed by a Kansas District Court Judge, that the prejudgment attachment covering the plaintiff's Jeep was instead signed by a deputy clerk, and that the prejudgment attachment was therefore void on its face as a matter of law. The attachment was dissolved. The Jeep has apparently since been sold by the plaintiff and the proceeds applied to the outstanding loan balance.

### II. Claim and Motion to Dismiss

It is important, at the outset, to clearly define what this case is and is not. The plaintiff's only federal claim is that his constitutionally protected property interest in his Jeep was injured and that the process received by him was less than that due him: pendent state claims based on conversion, malicious prosecution, outrage, and intentional infliction of emotional distress are also presented as counts II–IV of the Complaint. The federal claim is alleged to arise only under 42 U.S.C. § 1983: no claim in the nature of a direct action under the Fourteenth Amendment is presented. The plaintiff also expressly disavows any challenge to the constitutionality of any statute of the state of Kansas. No agent of the state or any of its subdivisions has been joined as a defendant. The plaintiff has alleged no conspiracy between Riley County officials and the defendant to deprive the plaintiff of his constitutional rights.

The defendant seeks to have the federal claim dismissed for want of subject matter jurisdiction, alleging that its actions were not "state action" under the Fourteenth Amendment nor "under color of" state law for the purposes of § 1983. The defendant has conceded, for the purposes of this motion to dismiss only, that the plaintiff suffered an injury to a constitutionally protected property right and that the process accorded to him in the course of that deprivation was less than that due him under the Fourteenth Amendment.

### III. Analysis Under Lugar v. Edmondson Oil Company, Inc.

#### A. Traditional Fourteenth Amendment Analysis under 42 U.S.C. § 1983.

The Fourteenth Amendment to the Constitution provides, in pertinent part, that

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

42 U.S.C. § 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Because of the clear language of § 1983, the traditional analysis of claims brought under that section has involved a two-step process:

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law." *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

In the context of claims under § 1983 that the rights to due process guaranteed by the Fourteenth Amendment have been violated, this two-step analysis would traditionally be satisfied as follows. First, to prove the constitutional violation, the plaintiff would have to show that he was deprived of a life, liberty, or property interest by state action. Second, to make out a cause of action under § 1983, the plaintiff would have to show that the defendant is a "person" who deprived the plaintiff of his Fourteenth Amendment rights while acting "under color of" state law.

There are three basic formats in which § 1983 claims of due process deprivations can arise. First, the named defendant can be a state officer or official whose acts are rendered "state action" by virtue of his position, who is a "person" under § 1983, and who acts "under color of" state law by virtue of his position in performing the challenged acts. This will be called a "first format case" in this opinion. Second, the named defendant can be a private party whose otherwise private actions are attributable to the state because some state statute, custom, or policy allows the private party to perform acts ordinarily performed only by the state, *see Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) ("public function" test); *Adickes, supra* ("state compulsion" test); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("nexus" test). This will be called a "second format case" in this opinion. Third, the named defendant can be a private party who has taken some action which has, in turn, triggered other action by state officials. This will be called a "third format case" in this opinion. The facts of the present case make it a third format case: the defendant filed a state lawsuit on the underlying debt and an application for a prejudgment attachment, while the court clerk and the county policeman performed the legal and mechanical aspects of the claimed deprivation.

Under the third format, and therefore under the facts of this case, it would appear, at first blush, that the two steps of the *Adickes* analysis are incapable of simultaneous satisfaction inasmuch as the private actor/named defendant has taken no action that can be labeled as that of the state. The problem has traditionally been circumvented, however, by satisfying the "state action" requirement of the Fourteenth Amendment with the action of the involved state officials and then applying various tests to the conduct of the private actors to determine if those private actors have acted "under color of" state law for the purposes of § 1983. *Adickes* itself is a classic example of this procedure. There, a

private actor (the Kress Company) refused service to a white woman in the company of six blacks. After leaving the store, the white woman was groundlessly arrested for vagrancy by a uniformed policeman. Only the private actor was sued under § 1983. On the plaintiff's conspiracy count, the Supreme Court found the "state action" requirement satisfied by the acts of the policeman, and applied a "joint action" or "conspiracy" test to the acts of the private actor to render that private actor's acts ones done "under color of" state law for the purposes of § 1983. In contrast, the substantive § 1983 claim presented by the plaintiff, that Kress had directly violated her Fourteenth Amendment rights, was analyzed as arising in the second format explained above: the private conduct of refusing service was rendered "state action" under the Fourteenth Amendment by applying a "state compulsion" test.

*B. Traditional Fourteenth Amendment Analysis in the Context of Prejudgment Deprivations.*

In the significant reworking of the constitutional implications of prejudgment attachment and garnishment statutes accomplished by the Supreme Court between 1969 and 1975, however, resort to the conceptual analytical framework outlined in the preceding section was unnecessary. In *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), a Wisconsin statutory scheme allowing the garnishment of wages on an ex parte application and on the signature of a court clerk, without any notice or opportunity for a prior hearing, was held to violate the Due Process Clause of the Fourteenth Amendment. The constitutionality of the state statutory scheme was directly attacked under the Fourteenth Amendment, which alone was enough to invoke federal jurisdiction under 28 U.S.C. § 1331.

In *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), a Louisiana statutory scheme providing for ex parte prejudgment sequestration was attacked directly under the Fourteenth

Amendment as violative of due process rights. Because of the many procedural safeguards built into that scheme, including judicial involvement and the posting of a bond, the Supreme Court held that the scheme did not violate due process. Again, 28 U.S.C. § 1331 was an adequate ground for federal jurisdiction.

Likewise, in *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the constitutionality of Georgia's prejudgment garnishment procedure was directly attacked as violative of the Due Process Clause of the Fourteenth Amendment. Because the procedure allowed prejudgment garnishment on an ex parte application and on a court clerk's signature, without notice or an opportunity to be heard, the statutory scheme was declared unconstitutional. Once again, 28 U.S.C. § 1331 was an independent and adequate ground for federal jurisdiction.

The seeds of conceptual confusion were first planted in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In that case, the constitutionality of Florida and Pennsylvania laws permitting prejudgment replevin on an ex parte application and on the signature of a court clerk without prior notice or a hearing were attacked. "The question . . . [of] whether these statutory procedures violate the Fourteenth Amendment's guarantee that no State shall deprive any person of property without due process of law" was the only one before the Court, *id.* at 70, 92 S.Ct. at 1989. Although the creditors who invoked the state schemes were named defendants, no damages nor relief was sought from them, and the Florida Attorney General was also a named defendant. A procedural quirk differentiates *Fuentes* from *Sniadach, Mitchell,* and *Di-Chem,* with which it is otherwise similar in all respects: *Fuentes* was brought under 42 U.S.C. § 1983, and jurisdiction was predicated on 28 U.S.C. § 1343(3).

The sum total of the Supreme Court's attention to this important procedural difference is contained in the following footnote:

Neither Mrs. Fuentes nor the appellants in No. 5138 sought an injunction against any pending or future court proceedings as such. Compare *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. Rather, they challenged only the summary extra-judicial process of prejudgment seizure of property to which they had already been subjected. They invoked the jurisdiction of the federal district courts under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

*Fuentes, supra* 407 U.S. at 71 n. 3, 92 S.Ct. at 1989 n. 3. Beyond this, not a single word of the opinion is devoted to § 1983 or its requirements. The Supreme Court engaged in precisely the same sort of constitutional scrutiny of the challenged state schemes as it did in *Sniadach, Mitchell,* and *Di-Chem,* and entered precisely the same sort of judgment finding those schemes to be violative of the Due Process Clause. Absolutely nothing is said about the private party creditors, which, if nothing else, leads to the inference that judgment ran against them because they were not expressly excluded from the judgment in the plaintiff's favor.

### C. Prejudgment Deprivation Analysis Under Lugar.

#### 1. Lugar Below

The seeds of conceptual confusion planted in *Fuentes* have now sprouted in *Lugar v. Edmondson Oil Company, Inc.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The underlying facts in *Lugar* have elements in common with both the earlier prejudgment attachment and garnishment cases and with the present case, and can be briefly summarized as follows. The debtor in *Lugar* was indebted to a supplier which sued on the debt in a Virginia state court. The supplier also sought a prejudgment attachment of the debtor's property, and, pursuant to Virginia law, filed an ex parte petition alleging a belief that the debtor was disposing or might dispose of the property. A court clerk signed a writ of attachment, which was then executed by a uniformed county sheriff. This is the statutorily authorized scheme in Virginia. The attachment was dissolved thirty-four days

later by a state trial judge who found that the statutory grounds for prejudgment attachment alleged in the petition had not been established. Although the supplier's action on the debt was eventually successful, the debtor sued the supplier in a United States District Court, alleging that his due process rights had been violated and invoking the Court's jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

The United States District Court for the Western District of Virginia dismissed the complaint for failure to state a claim under § 1983 because that Court perceived no "state action" by the creditor sufficient to satisfy the first step of the two step *Adickes* analysis, *Lugar v. Edmondson Oil Company, Inc.,* No. 78–0020(D) (W.D.Va., unpub., July 14, 1978). Because this absence of state action precluded finding a violation of the Fourteenth Amendment, no deprivation of a constitutionally protected right within the meaning of § 1983 had occurred.

The United States Court of Appeals for the Fourth Circuit, sitting en banc, affirmed the dismissal, 639 F.2d 1058 (1981), but on a different conceptual basis. The Court of Appeals placed the case in the third format, namely, that in which a private actor and state actors combine their efforts to produce the challenged deprivation. That Court then held that the involvement of the court clerk and the sheriff in effectuating the prejudgment attachment was sufficient to satisfy the "state action" requirement of the Fourteenth Amendment.

The Court of Appeals then moved to the second step of the *Adickes* analysis and found that step unsatisfied because, in that Court's opinion, insufficient evidence existed to demonstrate any "joint action" or "conspiracy" under *Adickes'* tests sufficient to render the creditor's actions ones taken "under color of" state law. This conclusion was premised on three cases. First, in *Adickes,* the conspiratorial nature of the undertaking of the private party defendant was important, and no showing of a con-

spiracy was made by the debtor in *Lugar.* Second, in *Lessman v. McCormick,* 591 F.2d 605 (10th Cir.1979), a conspiratorial undertaking by bank officers and a policeman was held to state a claim under § 1983, and again no conspiracy was claimed by the debtor in *Lugar.* Last, in *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), a conspiracy between state court litigants and the state judge was held to state a claim under § 1983; the Supreme Court also stated that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or joint actor with the judge."

Because the creditor in *Lugar* had merely invoked the presumptively valid Virginia prejudgment attachment scheme, and because that creditor had not engaged in any conduct that could arguably be described as a conspiracy with court or law enforcement personnel as required by *Adickes, Lessman,* and *Dennis,* the Court of Appeals found that the creditor's acts were not taken "under color of" state law and affirmed the dismissal. "The 'essential dichotomy' ... between private and public acts seems to us precisely defined at the point where a private litigant, having invoked the state's process, thereupon submits his interests along with those of his adversary to the neutral administration of the process by state officials having that responsibility," 639 F.2d at 1069.

## 2. *Lugar at the Supreme Court*

The Supreme Court granted certiorari in *Lugar* and affirmed in part, reversed in part, and remanded in a 5–4 decision. Substantial confusion has been spawned by the opinion, principally because the new test enunciated in the text appears to be inconsistent with the holding. These problems will be examined in more detail shortly.

Apparently because of the differing conceptual bases utilized by the District Court and the Court of Appeals, these bases were the primary object of interest for the Supreme Court. The narrow issue is stated as follows:

This case concerns the relationship between the § 1983 requirement of action under color of state law and the Fourteenth Amendment requirement of state action. 102 S.Ct. at 2747.

After recounting the facts and the decisions below, the Supreme Court examined both the cases performing traditional Fourteenth Amendment analysis under § 1983 detailed in part IIIA of this opinion and the cases performing traditional analysis in the context of prejudgment deprivations detailed in part IIIB of this opinion. This examination led the Court to conclude that "[i]f the challenged conduct of respondents constitutes state action as delimited by our prior decisions, then that conduct [is] also action under color of state law and will support a suit under § 1983," 102 S.Ct. at 2753.

Because the respondent in *Lugar* was a private actor who was being sued in a third format case, this holding confounds the traditional third format analysis mandated by *Adickes:* instead of satisfying the Fourteenth Amendment state action requirement with the acts of the involved state officials and then examining the private actor's conduct to determine if it satisfies the § 1983 requirement of "under color of" state law through application of the "joint action" or "conspiracy" tests, the Court instead looks to whether the private actor's conduct is "state action" under the Fourteenth Amendment and prior cases. This, of course, portends a utilization of those tests traditionally reserved for second format cases in determining third format cases as well.

This is, in fact, what the Supreme Court has done.

Our cases have accordingly insisted that the conduct [presumably of the private actor] allegedly causing the deprivation of a federal right be fairly attributable to the state. These cases reflect a two-part approach to this question of "fair attribution." 102 S.Ct. at 2754.

The Court then propounds a new two-part test to answer the "fair attribution" question:

First, the deprivation must be caused by the exercise of some right or privilege created

[a] by the state or

[b] by a rule of conduct imposed by the State *or*

[c] by a person for whom the state is responsible....

Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be

[a] because he is a state official,

[b] because he has acted together with or has obtained significant aid from state officials, or

[c] because his conduct is otherwise chargeable to the state. *Id.*

Once this new conceptual framework was established, the Court then rephrased the issue in *Lugar* in its new nomenclature:

Turning to this case, the first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority. The second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as "state actors." 102 S.Ct. at 2755.

A straightforward application of the two-part *Lugar* test to *Lugar's* facts appears to result in both of the questions being answered in the affirmative. The right having its source in state authority that was exercised by the private party is the right to prejudgment attachment, which is, of course, a completely statutory creature. Likewise, the private actor/creditor may be appropriately characterized as a state actor because of the significant aid obtained from the court clerk and the sheriff in effectuating the prejudgment attachment. The private actor would therefore appear to be engaging in "state action" under the Fourteenth Amendment, and may therefore be sued directly under § 1983 without any further inquiry into whether the private actor's conduct was taken "under color of" state law under § 1983.

It appears from the holding of *Lugar,* however, that the Supreme Court did not apply the two-part test in a straightforward manner. Instead, it first examined the complaint to determine whether the debtor's "claim of constitutional deprivation was directed at the Virginia statute itself or only at its erroneous application to him," holding that the "resolution of this issue is essential to the proper disposition of the case," 102 S.Ct. at 2755–56. Precisely why this resolution is essential to the proper disposition of the case is unclear; the Court explained its importance as follows:

Count II [of the complaint] alleged that the deprivation of property resulted from respondent's "malicious, wanton, willful, opressive [sic], [and] unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the state. Nor did they have the authority of state officials to put the weight of the state behind their private decision, *i.e.,* this case does not fall within the abuse of authority doctrine recognized in *Monroe v. Pape* [, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ]. That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. Count II, therefore, does not state a cause of action under § 1983 but challenges only private action. 102 S.Ct. at 2756.

The holding on count I, however, was exactly opposite. The Supreme Court read that count as challenging the Virginia statutory scheme as procedurally defective under the Fourteenth Amendment, and held that

the procedural scheme created by the statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, if the second element of the state action requirement is met as well. *Id.*

Because the creditor had received substantial aid from the court clerk and the sheriff, the second element was satisfied and a § 1983 claim was held to exist:

> Petitioner did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not, insofar as [he] challenged only misuse or abuse of the statute. 102 S.Ct. at 2757.

### 3. Confusion in Lugar's Wake

█ This Court now embarks on a very delicate area of judicial holding, that is, a respectful critique of appellate or superior court opinions. It is a tender trap for lower court judges—a sort of Catch-22 situation, to adopt a phrase from a recent novel. In undertaking such a respectful critique, a trial judge may garner ill-will from his statutorily superior brethren on the one hand, and, on the other, receive little credit for his intellectual or legal expertise. However, several tenets that this Court believes to be immutably moral and correct compel such a critique under the facts and circumstances of this case. The first immutable tenet is that judicial opinions at any level, including the Supreme Court level, may be less than clear, logical, precise, and well-written in the literary expression sense, in laying down precedential opinions for the public, the lawyers, and other judges alike. The second immutable tenet is the solemn duty of all lawyers, and especially of those lawyers working as judges and law professors, to perfect the law, to strive toward achieving that idealistic ideal of justice, and to define as precisely as possible the principles on which justice may be attained in the decisional process. The duties represented by this second tenet are often met most satisfactorily by pointing out an ambiguity, an omission, or a misconception in a written opinion that forms a part of the stare decisis fabric. With the importance of the undertaking significantly magnified because of the vital and wide-ranging roles played by the Fourteenth Amendment and § 1983 in our federal system of jurisprudence, this Court will now embark on a critical reading, and respectful critique, of appellate opinions subsequent to Lugar.

#### a. Holding of Subsequent Cases

Confusion as to the scope of cases covered by Lugar's two-step analysis, and the precise relationship between that analysis and the question of whether the constitutionality of a state statute is being attacked, appeared almost immediately after Lugar's publication. See generally Chayes, The Supreme Court, 1981 Term, 96 Harv.L.Rev. 62, 241–46. The following selection of quotations will illustrate the various conclusions reached by Justices of the Supreme Court and two Courts of Appeals.

At the Supreme Court level, Lugar has been cited in two subsequent cases: Lehman v. Lycoming County Children's Services, —— U.S. ——, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), and Blum v. Yaretsky, —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The plaintiff in Lehman asserted, in the context of a habeas corpus proceeding, that a Pennsylvania law permitting the state to take custody of her children and involuntarily sever her parental rights was unconstitutional. The Court held that habeas corpus jurisdiction under 28 U.S.C. § 2254 could not be invoked to challenge the constitutionality of the statute in question. In dissent, Justice Blackmun cited Lugar in the following context:

> I disagree with the Court's announcement that "no principled basis" would exist for limiting the approval of federal habeas jurisdiction in child custody disputes... When, as in this case, the State both initiates the challenged judicial proceedings and remains the ongoing legal custodian of the child, subject to state court order, the state action is plainly sufficient to create "custody in violation of the Constitution ... of the United States" for § 2254 purposes. Intrafamily disputes, however, are ordinarily privately initiated and result in private custody. If a child's natural parents disputed custody, and a state court awarded custody to one of them, a legitimate question would arise whether that person "may fairly be said to be a state actor." Lugar.... See

also *Dennis v. Sparks,* [supra] ("Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a . . . joint actor with the judge.") 102 S.Ct. at 3242 n. 6.

The plaintiffs in *Blum* alleged that their due process rights under the Fourteenth Amendment were infringed by the decisions of the utilization review committees of their nursing homes to transfer them to a lower level of Medicaid care without a notice or hearing. The action was apparently brought directly under the Fourteenth Amendment and the question of whether the committees' acts qualified as "state action" was thus directly presented. *Lugar* was cited three times in a manner significant to the present inquiry: once by a concurring Justice White, who authored *Lugar,* and twice by a dissenting Justice Brennan. Justice White wrote that

> The issue [in this case] is whether a private nursing home's decision to discharge or transfer a Medicaid patient satisfies the state action requirement of the Fourteenth Amendment. To satisfy this requirement, respondents must show that the transfer or discharge is made on the basis of some rule of decision for which the state is responsible. *Lugar* . . . . 102 S.Ct. at 2790 (White, concurring).

Justice Brennan cited *Lugar* in two footnotes:

> As the Court noted in *Lugar* . . . the state action necessary to support a claimed violation of the Fourteenth Amendment, and the action "under color of law" required by 42 U.S.C. § 1983, represent parallel avenues of inquiry in a case claiming a remedy under § 1983 for a violation of the Fourteenth Amendment's Due Process Clause. Of course, the "color of law" inquiry required by § 1983 focuses directly on the question whether the conduct of the particular § 1983 defendant is sufficiently connected with the state action that is present whenever the constitutionality of a state law, regulation, or practice is properly challenged. But this question may just as easily be framed as whether the § 1983 defendant is a "state actor." 102 S.Ct. at 2790–91 n. 1.

In *Lugar,* we addressed a decidedly different question of "state action." In that case, the § 1983 plaintiff sought damages against a private party who had availed himself of an unconstitutional state attachment procedure, and had enlisted the aid of government officials to impair plaintiff's property for his own benefit. We concluded that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." . . . 102 S.Ct. at 2791 n. 2.

The United States Court of Appeals for the Fifth Circuit had the opportunity to interpret *Lugar* in *Folsom Investment Co., Inc. v. Moore,* 681 F.2d 1032 (5th Cir.1982), in which the plaintiffs attacked an attachment of land pursuant to Louisiana law under the Fourteenth Amendment in a § 1983 action. That Court derived the following two principles from *Lugar:*

> The Supreme Court has now determined that the invocation of a state attachment statute is action under color of state law. *Lugar* . . . 681 F.2d at 1033.

> The Supreme Court . . . held that when a § 1983 plaintiff challenges the constitutionality of a state attachment procedure, as opposed to making mere nonconstitutional allegations of misuse or abuse of the statute, the private party who sets that attachment scheme in motion is to be considered a state actor.
> 681 F.2d at 1037.

The Court of Appeals also held that, in the event the § 1983 action resulted in a finding that the Louisiana statute was unconstitutional, the private party creditors would be immune from liability in money damages "so long as [they] neither knew nor reasonably should have known that the statute was unconstitutional," 681 F.2d at 1037.

The United States Court of Appeals for the Tenth Circuit also had an opportunity to apply *Lugar* in the case of *Coleman v. Turpen, et al.,* 697 F.2d 1341 (10th Cir.1982).

Coleman appealed the dismissal of his § 1983 suit in which he alleged that a sheriff, a prosecutor, and a wrecking company [Kiefer] deprived him of property without due process of law. Coleman was arrested on a murder charge and various items of property, including a truck with a camper valued at $8000 and two chests of tools, were seized by the Sheriff's Department. The Sheriff's Department then hired Kiefer to tow and store the truck, and the truck was later sold by Kiefer to satisfy the Sheriff's Department's $600 in accrued storage costs.

The Court stated the broad rule it had derived from *Lugar* as "Mr. Coleman has a cause of action under section 1983 if he was deprived of property through state action without due process of law," 697 F.2d at 1343. In reference to the camper and tools, the Court correctly interpreted the § 1983 claim as running against the private party wrecking company, Kiefer. To determine the amenability of Kiefer to such a suit, the Court first recited *Lugar's* two-part test and then applied it in the following manner:

> The State, in enacting [Okla.Stat.Ann. tit. 12A, §] 7–210, created the right exercised by Kiefer when it sold the truck. Thus, the sale satisfied the first part of the *Lugar* test... In applying the second part, the Court in *Lugar* stated that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." ... Kiefer jointly participated in seizing the truck by towing it away. Since the State has asserted a right to maintain possession of the camper, Kiefer held the truck for the State, not for Mr. Coleman. In allowing Kiefer to sell the camper, the state thus deprived Mr. Coleman of his property in joint participation with Kiefer. We hold that Kiefer's sale of the camper was state action under the fourteenth amendment and was therefore under color of state law for purposes of section 1983.

*Id.* 697 F.2d at 1345.

### b. Problems with these Holdings

The footnote by Justice Blackmun in *Lehman* appears to reduce *Lugar* to one question; namely, whether a defendant may fairly be said to be a state actor. In the context of child custody discussed in that footnote, such an application of *Lugar* would seem to sanction a suit under § 1983 whenever the two-part *Lugar* test is satisfied, regardless of whether a precise constitutional violation or challenge had been asserted. For example, if the child custody statutes had been directly attacked in a previous suit, and the Supreme Court had eventually determined those statutes to be constitutionally sufficient in all particulars, a private party's resort to those statutes at a later time would always provide a basis for a § 1983 action because the deprivation of custody of the child would have resulted from the exercise of a right created by the state that was substantially aided by state officials. Such an interpretation of *Lugar* that ignores the requirement of a constitutional attack on the state statute or right would vastly increase the scope of § 1983 by making every private action addressable if some state functionary were even collaterally involved.

*Blum* exhibits the same sort of imprecise thought. Justice White's statement that the state action requirement may be satisfied by showing that the challenged act "is made on the basis of some rule of decision for which the state is responsible" correlates to nothing in *Lugar* and appears to transform the two-part test into a one-part test by eliminating the second element. Justice Brennan, in the same case, ignores the two-part test entirely and flatly states that "state action ... is present whenever the constitutionality of a state law, regulation, or practice is properly challenged." Justice Brennan misstates the facts of *Lugar* when he writes that "a private party ... availed himself of an *un*constitutional state attachment procedure...." (emphasis added), and summarizes the holding of *Lugar* as "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that

party as a 'state actor' for purposes of the Fourteenth Amendment."

The first summary of *Lugar's* holding in *Folsom Investment* (681 F.2d at 1033) is clearly overbroad, as it authorizes a § 1983 action whenever *any* attachment statute is invoked—a result in conflict with the holding of *Lugar* itself. The second summation from *Folsom Investment,* however, (681 F.2d at 1037) appears to be correct.

The application of *Lugar* performed in *Coleman* provides the clearest example of the dangers inherent in a casual reading of *Lugar.* The statutory provision held sufficient to satisfy the first part of the *Lugar* test—Okla.Stat.Ann. tit. 12A, § 7–210—is the Oklahoma version of the Warehouseman's Lien provision of the Uniform Commercial Code. This provision is, of course, analogous to K.S.A. § 84–7–210, as well as to New York U.C.C. § 7–210 (McKinney 1964). The latter was expressly held an inadequate basis to sustain a suit under § 1983 in *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), a case only five years old and cited repeatedly with total approval by the *Lugar* court. The Court of Appeals for the Tenth Circuit has nevertheless determined that a private individual's sale of stored property under this provision is sufficient to maintain a § 1983 action when coupled with state involvement in the original seizure. Parenthetically, it should be noted that a city marshall arranged the original storage in *Flagg Brothers* as well, 436 U.S. at 153.

### IV. Proper Scope and Application of Lugar

In this Court's opinion, a correct interpretation of the scope and application of *Lugar* depends on three crucial facts: (a) the historical fact of *Fuentes v. Shevin, supra;* (b) the substantive area treated by *Lugar;* and (c) footnote 21 in the majority opinion in *Lugar.*

As previously detailed at length, *Fuentes* was somewhat of a procedural maverick inasmuch as it permitted a § 1983 suit against a private creditor who had done no more than invoke a presumptively valid

state prejudgment replevin scheme. The Supreme Court nevertheless subjected the scheme to constitutional scrutiny and struck it down as violative of due process guarantees. The observation may be made that the case therefore stands for the proposition that the constitutionality of state statutes authorizing prejudgment deprivations can be tested in a § 1983 action against the creditor who invokes them, although the conceptual basis for this proposition is unstated in the opinion. A very important collateral proposition is that a successful attack on the constitutionality of such statutes under § 1983 could lead to the awarding of attorney's fees under 42 U.S.C. § 1988.

The substantive area treated by *Lugar* —Virginia's prejudgment attachment scheme—is identical to the substantive area dealt with in *Fuentes.* A second observation may be made that *Lugar* should therefore fit within *Fuentes'* general proposition, namely, the constitutionality of Virginia's scheme should be subject to scrutiny because *Lugar* was brought under § 1983 and named the private creditor as the defendant.

The correctness of the two observations in the preceding two paragraphs is verified by footnote 21 in *Lugar's* majority opinion. That footnote, which seems to be consistently overlooked by courts citing *Lugar,* is the only one appended to part III of the opinion, where the new two-part test is enunciated, and it reads as follows:

> Contrary to the suggestion of the dissent, we do not hold today that "a private party's mere invocation of state legal proceedings constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." ... *The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment.* 102 S.Ct. at 2755 n. 21 (emphasis added).

These three crucial facts, when clearly seen and understood, make clear the intended effect of *Lugar's* new analysis. The case accomplishes one thing and one thing only:

it supplies the conceptual framework, missing from *Fuentes,* that allows constitutional attack on prejudgment attachment statutes in the context of a § 1983 action against the private party creditor.

■ Once this is understood, the apparent contradiction between *Lugar's* two-part test and its holding also disappears. It is obvious that the constitutionality of a state prejudgment attachment scheme is not properly in question when the provisions of that scheme have been disregarded by the private party creditor. Only when the private party creditor has properly invoked the statutory scheme and met its requirements may the deprivation of a property interest properly be traced to that scheme, and only then would the injured plaintiff have standing to challenge the constitutionality of that scheme. The interrelationship between these observations and the first part of the *Lugar* test is apparent: the "exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible" requires that the state provide a right or privilege and that the creditor *properly* invoke it. Abuse or misuse of a right or privilege is not the exercise of that right or privilege, and the constitutionality of the state's efforts to provide that right or privilege cannot properly be challenged when it has not been exercised. The Supreme Court's insistence on a constitutional challenge as a predicate to a cause of action under § 1983 in the limited context of pre-judgment attachments is therefore both rational and conceptually defensible, albeit not particularly well expressed in the maze of dissenting and concurring judicial dialectics.

### V. Conclusion

■ Because the plaintiff in this case has expressly disavowed any constitutional attack on any Kansas statute, and because he alleges that the prejudgment attachment of his Jeep was not performed in accordance with the requirements of Kansas law, he fails to present a valid cause of action under § 1983, *Lugar,* 102 S.Ct. at 2757.

This Court must therefore grant the defendant's motion to dismiss. Because no federal cause of action remains, the plaintiff's pendent state law claims must also be dismissed.

This is not to say, however, that the plaintiff is without a remedy. Under Kansas law, the plaintiff has a liberal remedy for the wrongful attachment he suffered.

> A party is entitled to an attachment only when certain facts exist, not when there is probable cause to believe they exist .... If they do not exist, the attachment is wrongfully issued, and the party causing it to issue is liable for all the damages actually sustained.

*M'Laughlin v. Davis,* 14 Kan. (2d Ed.) 168, 169 (1875), *quoted by Braun v. Pepper,* 224 Kan. 56, 60, 578 P.2d 695 (1978).

It appears to this Court that Kansas law requires a showing of neither malice nor lack of probable cause as a predicate of liability for a wrongful attachment, *id.* As the attachment here in question has already been held void on its face as a matter of state law by a state court, a valid state cause of action would, therefore, appear to lie for Mr. Long.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss the § 1983 claim for lack of subject matter jurisdiction is sustained.

IT IS FURTHER ORDERED that the plaintiff's pendent state law claims be dismissed for want of an independent basis of federal jurisdiction, without prejudice, and that the costs of this action be borne by the plaintiff.