**Ralph LILES, et al., Plaintiffs,**

v.

**Ronald E. REAGAN, Defendant.**

**No. CV. 85-0-797.**

United States District Court,
D. Nebraska.

Jan. 13, 1986.

Michael P. Farris, Education & Legal Defense Foundation, Washington, D.C., for plaintiffs.

Robert M. Spire, Atty. Gen., J. Kirk Brown, Asst. Atty. Gen., Lincoln, Neb., for defendant.

## MEMORANDUM OPINION

STROM, District Judge.

This matter is before the Court on defendant's motion to dismiss (Filing No. 6). Plaintiffs filed this action alleging deprivation of constitutional rights in violation of 42 U.S.C. § 1983 (Count 2) and oppression under color of office pursuant to Neb.Rev. Stat. § 28–926 (Counts 1 and 3). Oppression under color of office is asserted as an independent federal claim in Count 1 of plaintiffs' complaint and as a pendent state claim in Count 3 of the complaint. Jurisdiction is premised upon 28 U.S.C. § 1343.

Plaintiffs' allegations stem from actions of Nebraska District Court Judge Ronald Reagan. Judge Reagan allegedly jailed plaintiffs for contempt of court as a result of their failure to follow court orders and conditioned his recusal from a subsequent habeas corpus proceeding upon dismissal of a pending federal habeas corpus action.

Defendant asserts that plaintiffs' complaint fails to state a claim upon which relief can be granted for the reason that he is absolutely immune from suit.

Plaintiffs contend that Judge Reagan is not immune from suit for the reason that he acted in absence of jurisdiction with regard to his actions involving the habeas corpus petition. Plaintiffs also contend that a state court judge is not immune from prosecution under Neb.Rev.Stat. § 28–926, and that this Court has jurisdiction over suits arising under that statute.

For the reasons set forth below, the Court finds that plaintiffs have failed to state a claim upon which relief can be granted with respect to the 42 U.S.C. § 1983 claim (Count 2) and the court is without jurisdiction to hear claims based upon Neb.Rev.Stat. § 28–926 (Counts 1 and 3). Accordingly, plaintiffs' complaint will be dismissed.

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), allegations in the complaint must be viewed in the light most favorable to the plaintiff. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted).

It is clear on the face of the complaint that plaintiffs can prove no set of facts which would entitle them to relief. It is admitted in Paragraph 2.1 of the complaint that defendant Ronald E. Reagan is a district court judge for the State of Nebraska. In Subsection IV of the complaint, plaintiffs allege, *inter alia*, that Judge Reagan first ordered plaintiffs to show cause why they were not in contempt of the court's previous injunction. Subsequently, plaintiffs appeared before Judge Reagan but refused to answer questions from the judge, asserting their fifth amendment privilege. Judge Reagan then ordered

plaintiffs jailed for contempt. It is further alleged that Judge Reagan proceeded to hear further evidence in the contempt proceeding without counsel or the parties present and that Judge Reagan refused to appoint counsel for plaintiff Ralph Liles. Plaintiffs additionally allege Judge Reagan deprived them of rights by conditioning his recusal from a state habeas corpus proceeding upon plaintiffs' dismissal of a pending federal habeas corpus action.

█ The factual circumstances outlined above show that Judge Reagan was acting in his capacity as a judge and plaintiffs were dealing with him in that capacity. All of the actions taken by Judge Reagan were functions normally performed by a judge. There are no allegations that Judge Reagan did not have jurisdiction to preside over either contempt or habeas corpus proceedings. Judge Reagan is absolutely immune from suit for judicial acts under the doctrine of judicial immunity.

█ The doctrine of absolute judicial immunity will protect a judge against liability for a given act if two conditions are satisfied. First, the act must not have been taken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Second, the act must be a "judicial act." *Id.* at 356, 98 S.Ct. at 1104–05.

In *Stump v. Sparkman*, supra, the United States Supreme Court considered a suit against a judge who ordered sterilization of a petitioner's "somewhat retarded" daughter in an ex parte proceeding, without notice to the daughter and without appointment of a guardian ad litem. Reversing a decision of the Seventh Circuit Court of Appeals which imposed liability upon the judge, the Supreme Court discussed the jurisdictional condition, stating that:

> ... As early as 1872, the Court recognized that it was "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself. *Bradley*

*v. Fisher*, [13 Wall. 335, 20 L.Ed. 646 (1872)], supra, at 347. For that reason the Court held that "Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." 13 Wall., at 351. Later, we held that this doctrine of judicial immunity was applicable in suits under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

> The Court of Appeals correctly recognized that the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action, he had jurisdiction over the subject matter before him. Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction...." *Bradley*, supra, at 352, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously or was in excess of his authority; rather he will be subject to liability only when he acted in the "clear absence of all jurisdiction." 13 Wall., at 351.

Id. at 355–57, 98 S.Ct. at 1104–05.

The Court explained the distinction between "absence of jurisdiction" and "excess of jurisdiction" in footnotes as follows:

> In holding that a judge was immune for his judicial acts, even when such acts were performed in excess of his jurisdiction, the Court in *Bradley*, stated: "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject matter. Where there is clearly no jurisdiction over the subject matter, any authority exercised is a usurped authori-

ty, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars, the validity of his judgments may depend." *Id.*, at 351–52.

In *Bradley*, the court illustrated the distinction between lack of jurisdiction and excessive jurisdiction with the following examples: If a probate judge with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his actions; on the other hand, if a judge of a criminal court should convict a defendant of a non-existent crime, he would merely be acting in excess of his jurisdiction and would be immune. *Id.*, at 352.

Id., at 356–57 n. 6 and n. 7, 98 S.Ct. at 1104–05 n. 6 and n. 7.

Accordingly, this Court is compelled to construe the scope of Judge Reagan's jurisdiction broadly. *Stump v. Sparkman, supra*, at 356, 98 S.Ct. at 1104. Like the court at issue in *Stump*, the district courts of Nebraska have a broad jurisdictional grant. "The district courts have both chancery and common law jurisdiction and such other jurisdiction as the legislature may provide." Neb. Const. Art. V, § 9. The legislature has provided that "the district courts should have and exercise general, original and appellate jurisdiction in all matters, both civil and criminal, except when otherwise provided." Neb.Rev.Stat. § 24–302 (1979). Additionally, Nebraska state district court judges are given the express jurisdiction to hear matters relating to state habeas corpus petitions. Neb. Rev.Stat. §§ 29–2801, *et seq.*, (1979).

Judicial immunity except in the clear absence of jurisdiction has been applied in this Circuit. In *Duba v. McIntyre*, 501 F.2d 590, 591 (1974), the Eighth Circuit Court of Appeals held that the doctrine of judicial immunity was properly invoked to shield the conduct of a justice of the peace who attached and sold an entire stock of hogs belonging to plaintiff therein in pretextual satisfaction of a $55 misdemeanor fine. The Court noted that Nebraska law authorized judicial officers, including justices of the peace, to issue executions to recover fines and stated that "[w]e think that Judge Robinson was correct in holding that appellee's conduct, even though in excess of their jurisdiction, was within their general powers under Nebraska law and, therefore, cloaked with immunity for the purpose of a civil rights action under Section 1983." *Id.* at 593. For more recent Eighth Circuit support, *see Billingsley v. Kyser*, 691 F.2d 388 (8th Cir.1982), and *Michaelis v. Krivosha*, 566 F.Supp. 94 (D.Neb.), *aff'd*, 717 F.2d 437 (8th Cir.1983).

Similarly, Judge Reagan's actions in the present case may arguably been in excess of his jurisdiction, but it is clear that Judge Reagan had the power to hear and decide upon the issue before him. As long as the habeas corpus petition was properly before the court, the manner by which Judge Reagan handled it is cloaked with immunity.

The second condition imposed by the Supreme Court in *Stump v. Sparkman*, supra, at 360, 98 S.Ct. at 1106 is that the act must be a "judicial act." The court stated:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.

Id. at 362, 98 S.Ct. at 1107–08. The Eighth Circuit follows the above criteria. *White v. Bloom*, 621 F.2d 276, 279 (8th Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 533, 66

L.Ed.2d 292 (1980), *reh. denied,* 449 U.S. 1089, 101 S.Ct. 882, 66 L.Ed.2d 816 (1981).

Comparison of the present facts to those in cases holding acts of judges to have been non-judicial show that Judge Reagan was clearly acting within the ambit of his judicial capacity. *Compare, Rankin v. Howard,* 633 F.2d 844 (9th Cir.1980) (a judge's private prior agreement to decide in favor of one party is not a judicial act), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981); *Lopez v. Vanderwater,* 620 F.2d 1229, 1235–37 (7th Cir.1980) (a judge is not immune for prosecutorial acts prior to biased decision, but nonetheless immune from liability for decision); *Gregory v. Thompson,* 500 F.2d 59, 64 (9th Cir. 1974) (an assault is not a judicial act); and *Lynch v. Johnson,* 420 F.2d 818 (6th Cir. 1970) (a judge is not entitled to absolute immunity for acts taken while serving on an administrative or legislative board).

The Fifth Circuit has refined the *Sparkman* criteria to a four-part test to determine whether a given act is judicial. Though not dispositive, reference to the Fifth Circuit guidelines is helpful. The Court's inquiry is whether (1) the act complained of is a normal judicial function; (2) the events occurred in the judge's court or chambers; (3) the controversy centered around a case then pending before the judge and (4) the confrontation arose directly and immediately out of a visit to a judge in his official capacity. *Brewer v. Blackwell,* 692 F.2d 387, 396–97 (5th Cir. 1982).

Another relevant factor is the availability of appellate review of the questioned act. "[J]udges should be at liberty to exercise their functions with independence and without fear of consequences.... Errors may be corrected on appeal but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Plaintiffs herein clearly had an avenue of redress in state courts for errors or irregularities in the habeas corpus proceeding. Neb.Rev.Stat. § 29–2823. Apply-

ing the above principles to the factual allegations of plaintiffs' complaint, the Court finds that Judge Reagan's were clearly judicial acts.

Accordingly, plaintiffs' Section 1983 claim is dismissed for failure to state a claim upon which relief can be granted.

Plaintiffs also argue that Judge Reagan is not immune from civil liability under Neb.Rev.Stat. § 28–926, which provides:

28–926. **Oppression under color of office; penalty.**

(1) Any public servant or peace officer who, by color of or in execution of his office, shall designedly, wilfully or corruptly injure, deceive, harm or oppress any person, or shall attempt to injure, deceive, harm or oppress any person, commits oppression under color of office, and shall be answerable to the party so injured, deceived or harmed or oppressed in treble damages.

(2) Oppression under color of office is a Class II misdemeanor.

As noted, the jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3). That section provides that:

(a) The district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*    \*    \*    \*    \*    \*

(3) to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage of any right, privilege, or immunity secured by the constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

Plaintiffs contend that the phrase "authorized by law" includes any law, state or federal, and thus confers jurisdiction upon this court to redress a grievance based upon violation of a state statute. Such is not the case. As a matter of statutory construction, the phrase "authorized by law" is restricted by the dependent clause following in Subparagraph (3) which limits jurisdiction to any action to redress deprivation of a right "secured by the *Con-*

*stitution of the United States* or by any *Act of Congress* providing for equal rights of citizens...." (Emphasis added).

■ Since the federal district court is a court of limited jurisdiction, it is not appropriate for it to hear and consider the plaintiffs' pendent claim without determining that jurisdiction is otherwise appropriate. *Hagens v. Levine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Pendent jurisdiction may only be exercised once federal question jurisdiction has been established. *Pennhurst State School v. Haldeman,* 465 U.S. 89, 121, 104 S.Ct. 900, 917, 79 L.Ed.2d 67 (1984).

Moreover, plaintiffs erroneously contend in their brief that there is no authority holding that Section 1343(a) does not extend to rights protected by state statutes. On the contrary, it has been held that federal courts are granted jurisdiction under 28 U.S.C. § 1343 to vindicate only federal rights. See, e.g., *Brown v. Board of Bar Examiners of State of Nevada,* 623 F.2d 605, 609–10 (9th Cir.1980) and *Ronwin v. State Bar of Arizona,* 686 F.2d 692, 698 n. 6 (9th Cir.1981) (stating that the jurisdictional limitation stems from the express language of Section 1343), reversed on other grounds, *Ronwin v. Hoover,* 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). "[S]ection 1343(3) only provides jurisdiction over claims that state officials have violated a constitutional right or federal statute providing for equal rights." *Redd v. Lambert,* 674 F.2d 1032, 1035 (5th Cir.1982). See also, *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

In support of their position, plaintiffs cite *Hoehle v. Likins,* 405 F.Supp. 1167, 1171 (D.Minn.1975), for the proposition that jurisdiction under § 1343(a)(3) is appropriate when a substantial constitutional question is present. That proposition is wholly irrelevant for the reason that the presence of a constitutional right is not at issue. Although a constitutional right may arguably have been infringed, the defendant judge is absolutely immune from civil liability for his actions.

■ In light of this Court's dismissal of plaintiffs' Section 1983 claim for failure to state a claim upon which relief can be granted, plaintiffs' claim based upon Neb. Rev.Stat. § 28–926 will also be dismissed. This Court does not have jurisdiction over the subject matter of plaintiffs' Nebraska claim absent an independent federal question. The only issues of federal law have been disposed of through operation of the doctrine of judicial immunity. Where no federal cause remains after dismissal of a claimed civil action for deprivation of rights, pendent state law claims must also be dismissed. *Long v. Citizens Bank & Trust Co. of Manhattan, Ks.,* 563 F.Supp. 1203 (D.Kan.1983).

Accordingly, an order will be entered this date dismissing plaintiffs' complaint.