**David LAVICKY, Plaintiff-Appellee and Cross-Appellant,**

v.

**Bob BURNETT, Deputy Sheriff of Garfield County; Sam Otis, Deputy Sheriff of Alfalfa County; Delmar Coppock, Sheriff of Alfalfa County; Ed L. Moore, Assistant District Attorney, Alfalfa County, Defendants-Appellants and Cross-Appellees.**

Nos. 82–1969, 82–1998 and 82–1999.

United States Court of Appeals, Tenth Circuit.

March 19, 1985.

Robert A. Nance, Asst. Atty. Gen. of Okl., Oklahoma City, Okl. (Michael C. Turpen, Atty. Gen. of Okl., Oklahoma City, Okl., with him on briefs), for defendant-appellant Ed L. Moore.

Stephen Jones, James Craig Dodd, and Mary Helm, Enid, Okl., filed briefs for defendants-appellants Robert Burnett, Delmar Coppock, and Sam Otis.

Christopher W. Venters, Oklahoma City, Okl. (Harley E. Venters, Oklahoma City, Okl., with him on the briefs), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SETH and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

These appeals arise from a jury verdict granting plaintiff David Lavicky damages for violations of his Fourth and Fourteenth Amendment right to be free from warrantless searches and seizures and for violations of his Fifth and Fourteenth Amendment right not to be deprived of property without due process of law. The jury awarded plaintiff compensatory damages of $300 and punitive damages of $250 against each defendant. The trial court, however, granted defendants' motion for judgment n.o.v. on the issue of punitive damages. Plaintiff alleged violations of 42 U.S.C. §§ 1983, 1985(3), and 1986. On appeal we analyze the case only under 42 U.S.C. § 1983, because there are insufficient allegations of a racial or other class-based conspiracy to support the 42 U.S.C. §§ 1985(3) and 1986 claims. *See Santistevan v. Loveridge,* 732 F.2d 116, 117–18 (10th Cir.1984).

All defendants claim on appeal that: (1) plaintiff was not deprived of due process; (2) plaintiff is collaterally estopped from asserting a Fourth Amendment violation because the state court declined to suppress the seized evidence at his criminal trial; and (3) defendants did not violate plaintiff's Fourth Amendment rights. In addition, defendant Deputy Sheriff Bob Burnett claims he should not have been found liable because of his qualified immunity as a deputy sheriff. Defendant Undersheriff Sam Otis claims that the trial court erred by not granting his motions for directed verdict and judgment n.o.v. based on his tenuous involvement in the vehicle search and seizure. Defendant Sheriff Delmar Coppock claims that the trial court erred by not granting his motion for judgment n.o.v. for the same reason. Finally, defendant prosecutor Ed L. Moore claims he should be absolutely immune from suit as a prosecutor. Plaintiff cross-appeals, claiming that the trial court erred in granting the judgment n.o.v. denying his punitive damage award.

On March 15, 1979, Deputy Sheriff Burnett arrested plaintiff while plaintiff was working on his pickup truck at his home in Enid, Oklahoma, in Garfield County. Burnett had an arrest warrant, which had been issued in Alfalfa County in connection with the larceny of an automobile owned by Bruce and Ronnie Eckhardt of Alfalfa County. Burnett testified that while making the arrest he observed parts from the stolen Eckhardt truck, particularly the carburetor and valve covers, on plaintiff's pickup. At the time of the arrest Burnett neither seized nor searched the pickup. Instead, the next morning, without obtaining a warrant, Burnett arranged to have plaintiff's pickup towed to Franklin Motors in Garfield County. Burnett testified that Undersheriff Otis assisted him in towing the pickup. Later in the day Burnett, Otis, and Ronnie and Bruce Eckhardt conducted a warrantless search of plaintiff's pickup at Franklin Motors.

On approximately March 21, 1979, Tom Kent, a tow-truck operator, met with Otis, and Kent then towed plaintiff's vehicle from the Franklin Motors Garage to Kent's garage in Helena, in Alfalfa County, where

he stored it. The pickup was brought to the Alfalfa County courthouse for plaintiff's larceny trial and was returned to Kent's garage after one day at the courthouse. Neither the pickup, nor any parts of the truck, were introduced into evidence during the criminal trial. During the trial the prosecution did attempt to enter into evidence a screwdriver set found in the pickup, but the court ruled it inadmissible.

A state court jury convicted plaintiff of larceny of an automobile. On the day the court sentenced plaintiff for automobile larceny his attorney asked prosecutor Moore if plaintiff could obtain his pickup truck from the county. Moore told plaintiff's attorney that his truck could be returned as soon as the Eckhardts claimed their parts from it. In order to allow the Eckhardts to claim their parts, defendants Moore, Coppock, and Otis arranged to have the pickup towed to a garage in Cherokee, Oklahoma. The Eckhardts removed the parts that they believed were theirs, and then the owner of the Cherokee garage called Sheriff Coppock to have the pickup returned to Kent's garage. Otis then informed plaintiff's attorney that plaintiff could claim his truck. After plaintiff observed that the tires and wheels had been taken, the engine, transmission, and stereo were gone, the seats and carpets were torn, and the entire truck was essentially stripped, he filed this civil rights action against defendants for the alleged constitutional violations arising out of these events.

## I

### Due Process Claim

■ Defendants argue that plaintiff may not bring a § 1983 claim for deprivation of property without due process because plaintiff had a postdeprivation remedy under the Oklahoma Political Subdivision Tort Claims Act, Okla.Stat.Ann. tit. 51, §§ 151–170, which would provide constitutionally

adequate procedural due process. Although we agree that postdeprivation state remedies can provide adequate process for some intentional deprivations, we do not agree that plaintiff in this case should be restricted to his postdeprivation remedy.

In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that the Due Process Clause is not violated when a state employee, by a random and unauthorized act, negligently deprives an individual of property, if the state makes available a meaningful postdeprivation remedy. *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), extended that rule to random and unauthorized intentional conduct of state employees.[1]

In *Coleman v. Turpen,* 697 F.2d 1341 (10th Cir.1982), this court, interpreting *Parratt,* held that a prisoner may assert a § 1983 cause of action for deprivation of property without due process when the state retained money, not used as evidence, that it had seized from the prisoner. We said:

"It might have been impractical for the State to give Mr. Coleman a hearing before it seized the money during his arrest. However, the deprivation Mr. Coleman challenges is not the seizure of the money, but its retention by the State until his execution. A hearing to determine the propriety of this retention is not impractical."

*Id.* at 1344.

The Supreme Court's ruling in *Hudson* does not overrule our *Coleman* decision. The Court in *Hudson,* applying the rationale of *Parratt* to intentional torts, reasoned that a state could not anticipate its employees' "random and unauthorized" intentional conduct any more than it could anticipate similar negligent conduct. —— U.S. at ——, 104 S.Ct. at 3203. Consequently, it was similarly impractical for a state to be

---

1. If *Parratt* and *Hudson* are applicable to the instant case they apply only to the procedural due process claims under the Fifth and Fourteenth Amendments. They do not apply to violations of substantive constitutional proscriptions under the Fourth Amendment. *See Parratt,* 451 U.S. at 536, 101 S.Ct. at 1913; *Hudson,* —— U.S. at —— n. 4, 104 S.Ct. at 3208 n. 4 (Stevens, J., concurring and dissenting); *Augustine v. Doe,* 740 F.2d 322, 325–27 (5th Cir.1984).

required to hold predeprivation hearings for "random and unauthorized" intentional conduct. *Id.* Furthermore, the Court rejected prisoner Palmer's argument that postdeprivation hearings do not provide a meaningful remedy when an agent of a state could have held a predeprivation hearing. The Supreme Court concluded: "Whether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the State is in a position to provide for predeprivation process." *Id.*

In the instant case, the defendants' conduct in disposing of the pickup could not be characterized as the sort of random or unauthorized action that may be remedied by postdeprivation hearings. The record reveals that plaintiff's attorney approached prosecutor Moore requesting return of the vehicle after the larceny trial. Moore responded that the plaintiff's truck would be returned after the Eckhardts received their stolen parts. Coppock and Otis coordinated the dealing with the Eckhardts and arranged the recovery of the parts the Eckhardts claimed to be theirs. These actions constitute an intentional deprivation that may not be characterized as random. Moreover, Moore indicated that he believed, as a policy matter, that he had the duty to turn over the allegedly stolen parts to the Eckhardts without a hearing. This action, planned and authorized, is not the sort of action for which postdeprivation process will suffice. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436–37, 102 S.Ct. 1148, 1158–59, 71 L.Ed.2d 265 (1982); *Augustine v. Doe,* 740 F.2d at 327–29.

In this case, as in *Coleman,* it was not impractical for the state officials to hold a hearing to determine the ownership of the truck and its parts before its disposition. Indeed Oklahoma law already has a framework, which the officials here ignored, for determining ownership of allegedly stolen property prior to its disposition. An Oklahoma statute on seized stolen property provides that "[w]hen property alleged to have been stolen or embezzled, comes into the custody of a peace officer, he must hold it subject to the order of the magistrate au-thorized by the next section to direct the disposal thereof." Okla.Stat.Ann. tit. 22, § 1321 (footnote omitted). The following section provides:

"On satisfactory proof of the title of the owner of the property, the magistrate before whom the information is laid, or who examines the charge against the person accused of stealing or embezzling the property, may order it to be delivered to the owner...."

Okla.Stat.Ann. tit. 22, § 1322. Given the existence of this statutory framework and the planned nature of defendants' actions, we conclude that plaintiff's procedural due process rights in the disposition of his pickup and its parts were violated.

## II

### Collateral Estoppel

Defendants correctly assert that the doctrine of collateral estoppel may preclude plaintiff from litigating a Fourth Amendment issue in a § 1983 action if a state court has decided that same issue in previous litigation. *See Allen v. McCurry,* 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980); *Searing v. Hayes,* 684 F.2d 694, 697 (10th Cir.1982) (per curiam). Defendants specifically argue that because the state trial court refused to suppress the evidence gathered in the search of plaintiff's pickup, plaintiff is collaterally estopped from relitigating the Fourth Amendment illegal search and seizure issue in this § 1983 action. Although we recognize that the state trial court did deny plaintiff's pretrial suppression motion, in light of the court's later decision to exclude the only evidence offered at trial from that search, that pretrial order does not preclude plaintiff's Fourth Amendment claim here.

The state trial judge expressed doubt during the trial regarding the validity of his earlier ruling refusing to suppress the items seized by police. Plaintiff's attorney at the larceny trial objected when the prosecutor attempted to introduce a screwdriver set taken from the pickup after its

seizure. The court suppressed the proffered evidence, despite its earlier decision. Pl.Ex. 13. Although the court's basis for suppressing this evidence is unclear, it appears that the court was not convinced that defendants had adhered to Fourth Amendment search and seizure standards.[2] Thus, we cannot say as a matter of law that the illegality of defendants' search and seizure activities was "distinctly put in issue and directly determined" by the Oklahoma state trial court in its suppression decisions. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). Without that court's definite determination that evidence need not be suppressed despite allegations of a Fourth Amendment violation, defendants may not use collateral estoppel to preclude plaintiff's litigation of the Fourth Amendment claims in this § 1983 action.

## III

### Fourth Amendment Exceptions to the Warrant Requirement

Plaintiff's recovery upon his Fourth Amendment claim depends upon whether defendants acted unlawfully when they towed, impounded, and searched his vehicle without a warrant the day after his arrest for automobile larceny. The underlying premise of the Fourth Amendment is that warrantless searches and seizures are per se unreasonable except for a few narrowly defined exceptions. *Arkansas v. Sanders*, 442 U.S. 753, 758–59, 99 S.Ct. 2586, 2589–91, 61 L.Ed.2d 235 (1979); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971) (plurality opinion). Plaintiff has a cognizable constitutional claim for defendants' actions if those actions do not fall within one of the warrant requirement exceptions.

Defendants argue that the warrantless seizure of plaintiff's truck the day after his

arrest was proper under the search incident to arrest exception, *United States v. Edwards*, 415 U.S. 800, 802, 94 S.Ct. 1234, 1236, 39 L.Ed.2d 771 (1974); *Chimel v. California*, 395 U.S. 752, 755–65, 89 S.Ct. 2034, 2035–41, 23 L.Ed.2d 685 (1969), and under the plain view doctrine, *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) (per curiam). We discuss each exception separately.

■ Under the search incident to arrest exception, a police officer, incident to an arrest, may search a person "and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." *Chimel*, 395 U.S. at 768, 89 S.Ct. at 2043. Because Burnett arrested plaintiff while he was working on his pickup, Burnett could have seized any evidence of stolen parts that were within the immediate area at the time of arrest. Burnett, however, did not seize the vehicle at the time of arrest; instead, he waited overnight before acting.

■ The search incident to arrest exception is not applicable to this case. The exception protects the arresting officer and prevents the concealment or destruction of evidence within the arrested person's immediate control at the time of arrest. *Chimel*, 395 U.S. at 762–63, 89 S.Ct. at 2039–40. A necessary corollary of this rationale is that a valid search incident to arrest requires the search and arrest to be substantially contemporaneous. *United States v. Davis*, 423 F.2d 974, 979 (5th Cir.), *cert. denied*, 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69 (1970). In this case the search was not substantially contemporaneous and therefore may not be validated under that exception.

■ We recognize that the Supreme Court has allowed delayed warrantless searches of automobiles taken into custody

---

**2.** The court said:

"I don't think this is admissible, the search instance, the arrest he was taken with him that evening. At the time I heard this Motion before it was my understanding that virtually everything on his car was off this stolen car

but now it eviedently [sic] it wasn't. I am going to suspress [sic] that, the screw drive [sic] set, would you pick it up and put it back over there."

Pl.Ex. 13, 135.

at the time of arrest and of packages taken from automobiles at the time of arrest. *See United States v. Johns,* ——— U.S. ———, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). Nevertheless, the automobile exception does not apply. The pickup here was immobile, because its engine was partially dismantled, and it was on private property, not on a public way. Furthermore, it was not taken into custody at the time of the arrest. This fact distinguishes *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), relied upon by defendants. In *Edwards* the Court upheld a warrantless search and seizure of defendant's clothing the morning after his custodial arrest. *Id.* at 803–04, 808, 94 S.Ct. at 1237–38, 1239. But the officers had custody of defendant, as well as defendant's clothing, from the time of arrest until the time of seizure. The defendants in the instant case did not take the truck into custody at the time of plaintiff's arrest and thus cannot argue that their actions were merely a matter of searching evidence of which they had custody.

■ Defendants also argue the subsequent seizure of the pickup was justified because at the time of arrest the stolen parts were within Burnett's plain view. By waiting until the next day to seize the pickup, however, defendants fail to satisfy the inadvertence requirement of the plain view doctrine. *See United States v. Tolerton,* 669 F.2d 652, 654 (10th Cir.), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 473 (1982). Burnett knew the exact location of plaintiff's truck the day after plaintiff's arrest and thus cannot argue that the seizure was inadvertent. As the Supreme Court noted in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), when the police know in advance the location of evidence that they intend to seize, "The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as '*per se* unreasonable' in the absence of 'exigent circumstances.'" *Id.*

at 470–71, 91 S.Ct. at 2040 (emphasis in original).

## IV

### Qualified Immunity

■ Defendant Deputy Sheriff Burnett argues that even if his actions in seizing the truck violate the Fourth Amendment, he cannot be held liable if those actions were taken in good faith. Burnett possesses qualified immunity from liability under § 1983 if he proves that he did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). We have recently approved a jury instruction similar to the one used by the trial court in the instant case. *Varela v. Jones,* 746 F.2d 1413 (10th Cir.1984). We believe that the evidence presented could support a jury finding that a reasonable police officer would have known that he was violating the plaintiff's Fourth Amendment rights by seizing the truck without a warrant under the circumstances involved in this case. Therefore, we reject defendant Burnett's argument of qualified immunity.

## V

### Sufficiency of the Evidence

■ Defendant Burnett argues that he is not liable to plaintiff because there is no evidence that his actions caused any damage to plaintiff's truck. We reject this argument. Plaintiff is not merely suing for the actual damage to his pickup; he is suing for the violation of his constitutional rights. The purpose of § 1983 is to compensate persons for injuries caused by deprivations of their constitutional rights. Here there was a violation of plaintiff's right to be free from unreasonable searches and seizures, and, as a result, he may recover damages for that violation. *See Corriz v. Naranjo,* 667 F.2d 892, 897 (10th Cir.1981), *cert. dismissed,* 458 U.S. 1123, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *Smith v. Heath,* 691 F.2d 220, 226 (6th

Cir.1982); *cf. Hostrop v. Board of Junior College, District No. 515*, 523 F.2d 569, 579 (7th Cir.1975) (citing cases awarding damages in civil rights cases where no pecuniary loss shown), *cert. denied*, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976).

 Defendants Otis and Coppock claim that the trial court erred in not granting their motions for a directed verdict or for judgment n.o.v. A court determining whether to grant such motions must determine whether there is evidence upon which the jury properly could find for the non-moving party. *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 612–13 (10th Cir.1984). The appellate court applies the same standard in reviewing a motion for a judgment n.o.v. as the trial court.

 We believe the trial court here correctly denied Undersheriff Otis' motions. Plaintiff presented evidence at trial upon which a jury could have found Otis liable under § 1983. Burnett testified that Otis assisted with the seizure of plaintiff's truck, and that Burnett, Otis, and the Eckhardts, on the morning of the seizure, conducted a warrantless search of the truck. There was also evidence of Otis' involvement in the disposition of the pickup: he allowed the Eckhardts to remove any part of the truck they claimed to be theirs without a prior hearing to determine ownership, and he did not claim that his actions were in reliance upon prosecutor Moore's legal advice.

 We also believe Sheriff Coppock's motion for judgment n.o.v. was properly denied. Sheriff Coppock claims that he relied upon prosecutor Moore's advice and acted under Moore's direction. If the sheriff's duty is unclear, it should be a defense that he relied upon the advice of the prosecuting attorney's office. But the law Sheriff Coppock should have followed is clear here. When allegedly stolen property comes into his custody "he must hold it subject to the order of the magistrate authorized ... to direct the disposal thereof." Okla.Stat.Ann. tit. 22, § 1321. Further, Coppock has been sheriff for sixteen years, and during that time no doubt had in custody many items of allegedly stolen property that he should have handled under this statute. Under those circumstances we think the jury could properly find him liable for releasing the allegedly stolen parts of the truck to the Eckhardts without a magistrate's order.

## VI

### Prosecutorial Immunity

 We agree with defendant Moore's assertion that he cannot be held liable for the illegal seizure and search of plaintiff's truck. We disagree, however, with his assertion that he is absolutely immune, as a prosecutor, for his actions in allowing the Eckhardts to claim parts from plaintiff's truck without a hearing to determine ownership of those parts.

Moore argues that his actions in disposing of plaintiff's pickup were necessarily a part of his initiation and presentation of the state criminal case against plaintiff, and thus he is absolutely immune from liability for any violation resulting from those actions. *See Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). But as we said in *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir.1982), when the prosecutor managed "the post-trial disposition of seized property not used as evidence that the State did not intend to keep ... [he] was acting as an administrator, not as an advocate." *Id.* at 1346 (footnote omitted). Thus, Moore may not rely on his prosecutorial role to provide absolute immunity for his acts in disposing of the parts of the pickup. Instead, Moore has only a qualified immunity to shield him from liability for his actions. *Id.* From our examination of the record, applying the *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), qualified immunity standard, we hold that the jury properly could have found that Moore should reasonably have known that allowing the Eckhardts to remove parts from plaintiff's truck without a hearing violated plaintiff's constitutional rights.

## VII

### Punitive Damages

 The trial court granted defendants' motion for judgment n.o.v. on the issue of punitive damages. We recognize that an award of punitive damages involves a "discretionary moral judgment" by a fact finder, *see Smith v. Wade*, 461 U.S. 30, 52, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (1983), and thus an award, reasonable in amount, made by the jury should not be set aside unless the issue should not have been submitted to the jury in the first place.

The trial court here, in setting aside the jury verdict stated that:

> "upon careful review of all of the evidence it is clear that the plaintiff's proof failed entirely to establish such ill will, desire to injure, reckless indifference or malice on the part of any defendant to support the submission of the issue of punitive damages to the jury. The mistake in judgment in the performance of their respective duties subjected the defendants to actual damages, but such mistakes fell far short of the type of aggravated circumstances required for the award of punitive damages under the applicable authorities."

R. III, 803. The court cited, in support, *Silver v. Cormier*, 529 F.2d 161 (10th Cir. 1976). In *Silver*, we affirmed a punitive damage award based on proof that a public official had manifested "reckless indifference to the property rights of others, ill will, a desire to injure or malice." *Id.* at 163. The Supreme Court recently reaffirmed this standard for punitive damages when it held "that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. at 56, 103 S.Ct. at 1640. Thus, the trial court used a proper standard in determining the appropriateness of an award of punitive damages.

We have carefully reviewed the record. The trial court correctly states that these defendants made mistakes in judgment sufficient to hold them liable for actual damages. We have affirmed the findings that defendants should have realized they were violating Fourth, Fifth, and Fourteenth Amendment rights of plaintiff in the warrantless seizure and search of his truck and in allowing parts to be taken from the truck without providing plaintiff a predeprivation hearing. Nevertheless, we believe the trial court was correct that there was no evidence of malice, wantonness or oppressiveness to justify punitive damages. Officials cannot be held for punitive damages simply because they did not know the rules of conduct they should follow. Simple ignorance of the applicable legal rules, even arrogant ignorance, does not by itself indicate reckless or callous indifference to federally protected rights.

AFFIRMED.