Charles T. COLEMAN, Sr.,
Plaintiff-Appellant,

v.

Michael C. TURPEN, et al.,
Defendants-Appellees.

Nos. 86–1383, 83–1584 and 83–2371.

United States Court of Appeals,
Tenth Circuit.

Aug. 24, 1987.

Leslie Brown, Jr., Muskogee, Okl., for plaintiff-appellant.

Weldon Stout, Kennedy, Kennedy, Wright & Stout, Muskogee, Okl., for defendant-appellee Keifer Wrecker Service.

Mort G. Welch, Abowitz & Welch, Oklahoma City, Okl., for defendant-appellee Bill Vinzant.

David W. Lee, Asst. Atty. Gen., Chief, Criminal and Federal Divisions, Oklahoma City, Okl. (Michael C. Turpen, Atty. Gen. of Oklahoma, with him on the brief), for defendant-appellee Michael C. Turpen.

Before McKAY and McWILLIAMS, Circuit Judges, and BROWN, Senior District Judge.[*]

WESLEY E. BROWN, Senior District Judge, sitting by designation.

This is an appeal by Charles T. Coleman, Sr., from an order of the District Court which dismissed his civil rights action which was filed in 1980 under the provisions of 42 U.S.C. Sec. 1983. The subject matter of this litigation concerns certain items of personal property—a 1978 Ford pickup, personal tools, and cash in the sum of $210.00, which were seized at the time of Coleman's arrest on a murder charge on February 9, 1979, near Muskogee, Oklahoma.

The defendants-appellees in this action are Michael C. Turpen, then District Attorney of Muskogee County, Oklahoma, Bill Vinzant, Sheriff of Muskogee County, and Keifer Wrecker Service, a towing and wrecking company located in Muskogee, Oklahoma. In his complaint, Coleman contends that these parties, acting under color of state law, deprived him of property without due process in violation of the fourteenth amendment.

The trial court initially dismissed the complaint on the pleadings as being frivolous, upon the ground that Turpen, as prosecutor, was absolutely immune from suit—that Vinzant was immune since he had a statutory duty to keep the seized property as evidence until appellant's execution, and that the Keifer Wrecker Service was not acting under state law.

On appeal, the case was reversed and remanded, with a finding that Coleman stated a cause of action for deprivation of his cash and personal property. *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir.1982). *Taking the allegations of the complaint as true*, it was found that Keifer's sale of the property (the tools and the pickup) was a deprivation of property, pursuant to state law.[1]

"Kiefer jointly participated in seizing the truck by towing it away. Since the State has asserted a right to maintain possession of the camper, Kiefer held the truck for the State, not for Mr. Coleman. In allowing Kiefer to sell the camper, the State thus deprived Mr. Coleman of his property in joint participation with Kiefer. We hold that Kiefer's sale of the camper was state action under the fourteenth amendment and was therefore under color of state law for purposes of section 1983.

"In addition, if the allegations are true, the deprivation of Mr. Coleman's property was without due process. Mr. Coleman might have a state cause of action for conversion against Kiefer if Kiefer did not notify him before it sold the property.... However, since it would have been practical for the State to provide a hearing before the sale, and since there was no necessity to allow Kiefer to sell the property quickly, the postdeprivation conversion remedy does not provide due process. ... We hold that Mr. Coleman has stated a cause of action against all three defendants for the deprivation of his tools and camper."

*Coleman*, 697 F.2d at 1345.

With respect to the question of immunity, we agreed that Turpen, as prosecutor, was immune for his role in keeping the $210.00 cash, but the sheriff was entitled only to a qualified immunity, which did not protect him if he should reasonably have known that he was depriving Coleman of constitutional rights. As to the tools and camper, the prosecutor was entitled only to a qualified immunity in connection with his

---

[*] The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

1. At the time Coleman filed his complaint, he had been told that his property had been sold at auction. See discussion, *infra*.

role as "administrator" in managing the post-trial disposition of the seized property, not used as evidence, which the State did not intend to keep. The basis of defendant Turpen's potential liability was stated in this manner:

"A prosecutor's knowledge that he may be liable if he participates in the illegal sale of seized property will not make him hesitate to initiate a case or introduce seized property as evidence ... (Under the facts alleged by Coleman) defendant Turpen has only a qualified immunity for his conduct relating to the converted tools and camper. This immunity does not shield him from liability for a deprivation of the tools and camper if he should reasonably have known that the sale violated Mr. Coleman's constitutional rights." 697 F.2d at 1346.

We further found that, as to the truck-camper, defendant Vinzant's immunity, as sheriff, was only a qualified immunity, which did not protect him if he should reasonably have known that he was depriving Coleman of constitutional rights.

Following remand, the case was tried to the court, which filed its findings of fact and conclusions of law on September 22, 1983, and thereafter entered judgment in favor of all defendants. Central to this judgment was the trial court's conclusion that the plaintiff had failed to prove by a preponderance of the evidence that he was the owner of the pickup truck, the tools, and the $210.00 in question. In connection with its disposition of the case, the court also found, as a matter of fact, that the pickup and the tools *were in the possession of Keifer Wrecker Service*, and that they had not been converted, and that all defendants "were acting in good faith with regard to the pickup and the tools".

The judgment in favor of defendants was appealed, and on March 13, 1985, we entered our order and judgment (unpublished) reversing the trial court's finding as to ownership of the camper and tools:

"... the district court's determination that plaintiff had failed to prove ownership of the truck, camper and tools was erroneous. The district court's determi-

nation with regard to the cash was a permissible finding based on evidence that the money belonged to plaintiff's victim and will be upheld.

"The judgment of the district court as to ownership of the camper and tools must be reversed. Plaintiff is entitled to his camper and tools notwithstanding defendant's qualified immunity, since immunity cannot prevent suit for return of property to which the state has no valid claim ... In all other respects the judgment is affirmed.

"The judgment of the United States District Court for the Eastern District of Oklahoma is affirmed in part and reversed in part and remanded for entry of judgment in accordance with this opinion."

Following remand, and on April 24, 1985, the district court entered an order directing the defendants to return the tools and the Ford pickup truck with camper attached to Coleman or his designated representative.

The defendants Turpen and Vinzant advised the court that they had "no custody or control of the pickup or tools" in question. The defendant Keifer Wrecking Service, by William Keifer, advised that the truck-camper could not be delivered because it had been sold to Sooner Salvage *in 1984* for $400.00 or $450.00 and that it had been crushed. William Keifer also certified that on July 9, 1985, he delivered Coleman's tools to Coleman's attorney, Leslie Brown, Jr. In a further response filed August 12, 1985, on behalf of William Keifer (Vol. I Rec. Item 26), this statement concerning the pickup appears:

"That the Muskogee Police Department, *under the direction of Michael Turpen and Vinzant*, called Keifer Wrecker Service on its rotation of calls on the subject vehicle. After the vehicle had been stored at the Police Department for a period of (4) months, Ernie Brackett, driver for Keifer Wrecker Service, was told to tow the car to a close storage which was at Keifer Wrecker Service. Keifer Wrecker Service was unable to get an accurate and valid identification number on the vehicle. *Michael Turpen*

*advised Keifer Wrecker Service to do whatever they wished to with the car."* (Emphasis supplied.)

On February 13, 1986, the trial court dismissed Coleman's action upon the ground that it lacked jurisdiction to vary or amend the mandate of the Tenth Circuit which ordered that the tools and camper be returned—an order and mandate which, in the case of the pickup and camper, could not be performed.

Coleman appeals from the Order dismissing his case. In addition, he has filed in this Court, and in this case, a Motion to Amend the Judgment (and Mandate) entered by this Court on March 13, 1985, (under Cases No. 83–1584 and 83–2371) wherein we determined that Coleman was entitled to return of his property notwithstanding the question of immunity. In this motion, Coleman contends that defendants have misled this Court to believe that they were still in possession of the personal property, "when in fact (defendants) had substituted chattels similar to those of Appellants during the trial of this case", and that defendants' "actions in this cause regarding disclosure of the existence of Appellant's chattels have been false and misleading with an intent to perpetrate a falsehood upon the Court." Attached to this Motion is a copy of a letter *dated May 7, 1980,* from Michael Turpen, District Attorney, advising Coleman that his truck, camper, and tools *had been sold:*

"Please be advised that I have received your request for the return of your property:

1. Your truck & camper, and tools;
2. The $210.00 in cash you were booked into jail with.

In relation to your truck and camper, it is my understanding that they were sold at public auction by Keifer Wrecker Service to satisfy the storage fee which became very significant in light of the length of time they were required to hold the truck. In relation to your tools, I would

suggest that you correspond with Sheriff Bill Vinzant, the custodian of the evidence in your case. In relation to the $210.00 in question, it is the State's position that this money is part of the fruits of the burglary/robbery in question in this case, and therefore should be held as evidence pending the outcome of your appeal."

Because we believed that defendants had possession and control of Coleman's pickup, camper and tools on the occasion of the last appeal, we did not examine the question of qualified immunity because we found that immunity would not prevent suit for return of property to which the state has no valid claim. We now find that there is no truck-camper and an examination of the transcripts of the hearings held on April 26 and June 24, 1983, prior to the last appeal, discloses that Coleman's truck did not in fact exist *at that time,* at least not in a recognizable condition, because the vehicle which was pointed out to be Coleman's white pickup in the Keifer storage lot, had two red doors, a blue fender, and no camper attached, and although Keifer testified that the truck had not been driven, it had a valid operating sticker purchased in December 1982. Vol. III Record, Transcript, June 24, 1983, pp. 41–46.[2]

Our review of the Record has raised a serious question as to the real status of Coleman's personal property at the time of the 1983 evidentiary hearings, and some inquiry must be made as to whether or not false and misleading information has been deliberately or inadvertently furnished to the court in that regard.

Since it now appears that the pickup and camper no longer exist, the intent of our prior judgment and mandate has been frustrated and made incapable of execution. For this reason, the judgment of this court entered on March 13, 1985, will be vacated, our Mandate will be withdrawn, and the case will be remanded for an appropriate

---

2. Plaintiff's counsel visited the storage lot just before June 24th, and took pictures of the truck which was pointed out as Coleman's property. The evidence tended to show that the particular truck in question had been wrecked. In his

motion to amend our prior judgment, Coleman claims that defendants have substituted chattels in an effort to perpetrate a falsehood on the court.

inquiry into Coleman's assertion that chattels have been substituted in an effort to mislead the court.

Upon remand, the trial court should further determine the questions of qualified immunity and the assessment of damages, in the absence of immunity. As to immunity, the standards are set out in our opinion in the first appeal of this case, *Coleman v. Turpen,* supra, 697 F.2d 1341—that is—the question is whether or not defendants knew or should reasonably have known that Coleman was being deprived of his constitutional right to due process.

In this connection, we note that in *Coleman v. Turpen,* supra, 697 F.2d 1341, we found that defendant Turpen was acting as an administrator in managing the post-trial disposition of seized property. The record is not clear as to Sheriff Vinzant's responsibilities under state law for property seized but not used in evidence. It is clear that Keifer Wrecking Service was holding the truck-camper on behalf of the County. A receipt given for the truck showed it was being held for the County. Roger Chrisco, a state investigator, testified that he was present at the scene of Coleman's arrest, at the request of the Sheriff's Department and the District Attorney, in order to assist in "processing the vehicle", and that he made the determination to impound the vehicle (Vol. III Record, Transcript, p. 8). Vinzant admitted that he received a letter from Coleman in May, 1980, inquiring about his property, but he did not answer it.

We have no evidence in the record from defendant Turpen concerning his statement to Coleman in May, 1980, that the truck and camper had been sold at auction, and no evidence from him which would support a finding of qualified immunity.[3]

Under the provisions of 28 U.S.C. Sec. 2106:

"The Supreme Court or any court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

Under the provisions of 28 U.S.C. Sec. 452, "the expiration of a session of court in no way affects the power of the court to do any act or take any proceeding".

■ While a mandate once issued by our court will not be recalled except for good cause shown, an appellate court has power to set aside at any time a mandate that was procured by fraud *or act to prevent an injustice,* or to preserve the integrity of the judicial process. *Greater Boston Television Corp. v. F.C.C.,* 463 F.2d 268 (D.C. Cir.1971) *cert. denied* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). And see discussion, *American Iron and Steel Institute v. E.P.A.,* 560 F.2d 589 (3rd Cir.1977); *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978).

In *Clarke v. Boysen,* 273 F. 923, at 923 (8th Cir.1921), an appeal from the District Court of Wyoming, the appellate court expressed the rule in this manner:

"We are asked by this motion to 'rectify' the decree issued and to recall the mandate. We cannot treat this motion as of the nature of a petition for rehearing, for it is filed out of time, and appellants have already filed, and we have ruled upon, one such motion. Nor can it be considered as a bill of review.... But every court has an inherent power, even of its own motion, to make certain that its orders and decrees are confined to its jurisdictional powers in the instance involved, and that such orders and decrees carry out the expressed determinations upon which they are based."

In view of our withdrawal of the mandate, it is ordered that the Order of the District Court entered February 13, 1986, dismissing this action is set aside.

---

3. Turpen was subpoenaed by plaintiff to testify at the June 24, 1983, hearing, but the trial court quashed service of the subpoena. Counsel's request to be advised of the grounds for this action was denied. Vol. III Record, pp. 4–5.

It is ordered that Appellant's Motion to amend the judgment of this court heretofore entered on March 13, 1985, in the case of *Charles T. Coleman, Sr. v. Michael T. Turpen, et al.,* Case Nos. 83–1584 and 83–2371, be DENIED;

Upon the Court's own motion, in the interest of justice, and to preserve the integrity of the judicial process, it is ordered that the judgment heretofore entered by this Court on March 13, 1985, in *Charles T. Coleman, Sr., v. Michael C. Turpen, et al.,* Cases No. 83–1584 and 83–2371, be vacated, and the mandate recalled; and

It is ordered that the case be remanded for trial of the issues discussed above, including the questions of qualified immunity, and the assessment of damages in the absence of immunity.[4]

---

4. This panel is authorized to state that Judges Barrett and Seymour, members of the panel which entered the judgment on March 13, 1985, agree that the mandate should be recalled.